IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Jason A. Pulley,<br>Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:11cv334 (AJT/IDD) |
| Detective J. G. Stocks,<br>Defendant. | )<br>)<br>) | |

MEMORANDUM OPINION

Jason A. Pulley, a Virginia inmate proceeding pro se, filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that he was the victim of false arrest and malicious prosecution. The sole defendant remaining in the lawsuit is Detective J. G. Stocks[1] of the Chesterfield County Police Department. The matter is now before the Court on defendant's Motion to Dismiss plaintiff's claims arising under the Eighth and Thirteenth Amendments, as well as his arguable state tort claims, and defendant's Motion for Summary Judgment on plaintiff's Fourth Amendment claims of malicious prosecution and false arrest.

In his initial complaint, Pulley alleged that his rights were violated when he was falsely arrested and imprisoned and maliciously prosecuted for a bank robbery he did not commit. In addition, plaintiff claimed that he was slandered and his character was defamed when his photograph was shown on the news in connection with the false charges. As defendants, plaintiff named the Bank of McKinney and the Chesterfield Police Department, and he sought an award of monetary damages. By Order dated April 12, 2011, plaintiff was informed that the Bank of

---

[1] The defendant's middle initial was incorrectly stated on the amended complaint and subsequently in the caption of the case as "D." Stocks Aff., ¶ 2.

1

McKinney and the Chesterfield Police Department are not "persons" amenable to suit under § 1983, and he was allowed an opportunity to particularize and amend his allegations in an amended complaint. Dkt. 3. Plaintiff submitted an amended complaint as instructed. Dkt. 5. By Order dated May 9, 2011, named defendant Danielle Ingraham, a teller at one of the banks plaintiff was accused of robbing, was dismissed as a party to the action pursuant to 28 U.S.C. § 1915A, and remaining defendant Detective Stocks was directed to file an answer or other responsive pleadings to the complaint. Defendant Stocks filed his Motion to Dismiss and Motion for Summary Judgment on July 8, 2011, along with a supporting memoranda and exhibits. Plaintiff was provided with notice as required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) that he could file responsive materials within twenty (20) days. See Order of May 9, 2011, Dkt. 8, ECF 3. However, plaintiff has filed no response to either of the motions under consideration. For the reasons that follow, both defendant's Motion for Summary Judgment and his Motion to Dismiss will be granted.

## I. Background

The following material facts are uncontested. On Wednesday, May 26, 2010, the Bank of McKinney in Chesterfield County, Virginia was robbed. Stocks Aff. ¶ 4. The robber, a black male dressed in a white tee shirt and dark pants and wearing a baseball cap, entered the bank shortly after it opened at 9:00 a.m. Stocks Aff. ¶ 6. He was speaking on a cell phone as he approached the teller line, and he passed a note to a teller which read, "Give me all the money. Don't make me use the gun." Id. The teller gave the robber the money from her drawer, and the robber left the bank. Detective Stocks was among the law enforcement personnel who responded to the scene and initiated a criminal investigation of the incident. Stocks Aff. ¶¶ 5, 19.

The following Wednesday, a suspicious individual entered the Bank of Southside Virginia in Dinwiddie County, which borders Chesterfield County. Stocks Aff. ¶¶ 7 - 9. The individual was a black male, he wore dark pants, a white tee short and a red baseball cap, and he entered the bank shortly after it opened. Stocks Aff. ¶ 8. He appeared on the video surveillance film to be talking on a cell phone as he approached the teller line, but apparently because the tellers in this bank were located behind glass, the man left the bank without speaking to a teller or transacting any business. Stocks Aff. ¶ 9.

After the incident at the Bank of Southside Virginia, law enforcement officials from Chesterfield and Dinwiddie Counties consulted and decided to set up surveillance at other area banks the following Wednesday. Stocks Aff. ¶ 10. Stocks and another Chesterfield County detective, Carey Williams, were both involved in the surveillance efforts. Id. Williams Aff. ¶ 6.

Consistent with the two earlier incidents, the Bank of McKinney in Dinwiddie County was robbed on Wednesday, June 9, 2010. Stocks Aff. ¶ 11. As before, the robber was a black male wearing a red baseball cap, dark pants, and a white tee shirt, and he appeared to be talking on a cell phone as he approached the teller line. Stocks Aff. ¶ 12. As in the robbery of the Chesterfield bank, the man handed a teller a note which read, "Give me all the money in the drawer. Don't make me use the gun." Stocks Aff. ¶ 12. The man thereupon fled the bank, jumped into a green Ford Explorer, and drove away. Stocks Aff. ¶ 13. Almost immediately, a Dinwiddie County Deputy Sheriff observed the Explorer as he was responding to the scene of the robbery, and officers pulled the Explorer over in a local parking lot. Id. Detectives Stocks and Williams also responded to the scene. Stocks Aff. ¶ 14.

The driver of the Explorer was Antwan Thomas ("Thomas"), and the passenger was the

petitioner, Jason Pulley. Stocks Aff. ¶ 15. Recovered from the passenger compartment of the Explorer was a red baseball cap and the exact amount of money that had just been stolen from the Bank of McKinney. Stocks Aff. ¶¶ 15, 19. Pulley and Thomas were taken into custody and transported to the Dinwiddie County Sheriff's Office to be interviewed. Stocks Aff. ¶¶ 15 - 16.

After the two men were advised of their rights under Miranda v. Arizona, 384 U.S. 436 (1966), Pulley declined to be interviewed. However, Thomas agreed to be interviewed; Detectives Stocks and Williams were present. Stocks Aff. ¶ 16; Williams Aff. ¶¶ 7 - 8. Thomas implicated Pulley as the robber of the Bank of McKinney in Dinwiddie for which they had both just been apprehended. Thomas also implicated Pulley as both the individual who had entered the Bank of Southside Virginia the previous Wednesday and the robber of the Chesterfield County bank on May 26. Stocks Aff. ¶ 16; Williams Aff. ¶¶ 8, 12. Thomas admitted that he was the driver in the latter two incidents. Id. Warrants were obtained against Pulley and Thomas for the Dinwiddie County robbery, and they were formally arrested. Stocks Aff. ¶ 15; Ex. D.

On June 11, 2010, two days after the Dinwiddie robbery, Detective Williams obtained warrants charging Pulley with the bank robbery in Chesterfield County. Stocks Aff. ¶ 17; Williams Aff. ¶¶ 11 - 12. The magistrate before whom Detective Williams appeared found that probable cause existed to issue warrants for Pulley's arrest. Williams Aff. ¶ 13. Since Pulley was already in custody, the warrants were transmitted to Dinwiddie County, and Dinwiddie authorities arrested Pulley. Williams Aff. ¶ 15; Resp. Ex. E, F. Detective Stocks played no part in obtaining the arrest warrants, having them transmitted to Dinwiddie County, or arresting Pulley. Stocks Aff. ¶ 20. Following a preliminary hearing on July 27, 2010, a judge of the Chesterfield General District Court found probable cause that Pulley had committed the offense

4

of robbery, and the robbery charge was certified to the grand jury. The grand jury returned a true bill on the robbery charge, and Pulley also was directly indicted by the grand jury for conspiracy to commit the Chesterfield bank robbery. Resp. Ex. G.

Pulley was tried to a jury in the Chesterfield Circuit Court on February 15, 2011, and was acquitted of the robbery and conspiracy charges he faced. Stocks Aff. § 21; Am. Compl. at 5. At the time the instant motions were filed, Pulley remained confined at the Riverside Regional Jail awaiting trial on charges lodged against him stemming from the Dinwiddie County bank robbery. Stocks Aff. ¶ 21; Am. Compl. at 2.

## II. Motion for Summary Judgment

### A. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable

to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### B. Analysis

Defendants Stock is plainly entitled to the summary judgment he seeks on Pulley's Fourth Amendment claims of false arrest and malicious prosecution. "The extent to which a claim of malicious prosecution is actionable under § 1983 is one on which there is an embarrassing diversity of judicial opinion." Albright v. Oliver, 510 U.S. 266, 270 n. 4 (1994). The courts of appeals hold divergent views regarding whether and under what circumstances § 1983 provides a malicious prosecution or false arrest cause of action. See Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000), cert. denied, 531 U.S. 1130 (2001). In this circuit, a § 1983 claim for malicious prosecution and/or false arrest is properly understood "as a Fourth Amendment claim for unreasonable seizure which incorporates some of the elements of the common law tort."[2] Id.; see

---

[2] The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures [.]" U.S. Const. amend. IV. The "touchstone" of the Fourth Amendment is reasonableness. United States v. Knights, 534 U.S.

also, Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002) (recognizing that a plaintiff alleging a § 1983 false arrest claim needs to show that the officer decided to arrest him without probable cause to establish an unreasonable seizure under the Fourth Amendment); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001) (§ 1983 claims of false arrest and false imprisonment " are essentially claims alleging a seizure of the person in violation of the Fourth Amendment."). To support a claim of malicious prosecution, a plaintiff must show: (1) the initiation or maintenance of a proceeding by the defendant against the plaintiff; (2) termination of that proceeding favorable to the plaintiff; and (3) lack of probable cause to support that proceeding. Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996); Curtis v. Devlin, 2005 WL 940571 at *6, n. 11 (E.D. Va. Apr. 19, 2005). Similarly, to prevail on a claim of false arrest, a plaintiff must show that the defendant lacked probable cause. Brown, 278 F.3d at 367; see also, Gatter v. Zappile, 67 F. Supp. 2d 515, 519 (E.D. Pa. 1999).

Here, it is uncontroverted that Detective Stocks took no action to initiate Pulley's prosecution for the Chesterfield County bank robbery. Stocks did not appear before the magistrate; he did not transmit the warrants to Dinwiddie County for service after they were issued; he did not arrest Pulley; and he was in no way responsible for the conspiracy charge that the grand jury eventually brought by direct indictment. Since Detective Stocks took no action to initiate Pulley's prosecution, he cannot be liable under § 1983 for malicious prosecution. Brooks, 85 F.3d at 183.

Nor can Stocks be liable to Pulley for false arrest, because ample probable cause existed

---

112, 118 (2001). Thus, the Fourth Amendment does not bar all searches and seizures, but only those that are "unreasonable." United States v. Reid, 929 F.2d 990, 992 (4th Cir. 1991).

to arrest Pulley. For probable cause to exist, the evidence need only be sufficient to warrant the belief of a reasonable officer that an offense has been or is being committed by a particular individual. Curtis v. Devlin, 205 WL 940571 at *7 (E.D. Va. Apr. 19, 2005), citing Wong Sun v. United States, 371 U.S. 471 (1963). A defendant's ultimate acquittal is irrelevant to this inquiry. The determination of whether probable cause exists in a particular situation turns on whether the suspect's conduct is known at the time to the police officer and whether that conduct would give rise to a reasonable belief on the part of the officer that a criminal offense had occurred. Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). Here, as outlined above, the evidence that Pulley was complicit in the robbery of the Chesterfield County bank was more than adequate to meet this test. Stocks Aff. ¶ 19; Williams Aff. ¶ 12. Since Detective Stocks had probable cause to believe that Pulley committed the robbery of the Chesterfield County bank, Pulley's arrest for that offense did not violate Fourth Amendment principles. Brown, 278 F.3d at 367. Accordingly, Detective Stocks is entitled to summary final judgment on Pulley's claims of false arrest and malicious prosecution.[3]

### III. Motion to Dismiss

### A. Standard of Review

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When determining whether a motion to dismiss should be granted, the alleged facts are presumed true and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could

---

[3] Because defendant has established his entitlement to judgment as a matter of law on plaintiff's claims of false arrest and malicious prosecution, it is unnecessary for the Court to address his arguments on the question of qualified immunity.

be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...." Twombly, 550 U.S. at 55.

### B. Analysis

In the amended complaint, in addition to the Fourth Amendment claims discussed above, Pulley also alleges that his rights under the Eighth and Thirteenth Amendments were violated. Am. Compl. at 5. He also appears to assert conclusory tort claims for defamation and slander. Am. Compl. at 6. For the reasons which follow, all of these claims are subject to dismissal pursuant to Rule 12(b)(6).

Pulley alleges in the amended complaint that his rights under the Eighth Amendment were violated "because it states excessive bail shall not be required, nor excessive fines imposed nor cruel and unusual punishments inflicted." Am. Compl. at 5. The Eighth Amendment prohibits the infliction of cruel and unusual punishment, Preiser v. Rodriguez, 411 U.S. 475 (1973), and typically applies in prisoner-initiated § 1983 suits to claims concerning conditions of confinement. See, e.g., Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). There is no

Supreme Court precedent holding that the Eighth Amendment creates a right to bail. Therefore, in order to implicate the Eighth Amendment in the context of excessive bail, Pulley would have to show a denial of due process or equal protection in the imposition of his bail. Koen v. Long, 302 F. Supp. 1383, 1391-92 (E.D. Mo. 1969), aff'd, 428 F.2d 876 (8th Cir. 1970), cert. denied, 410 U.S. 923 (1971). Pulley makes no allegation whatever to suggest such a claim, nor does he allege that Detective Stocks was involved in any way in setting the allegedly "outrageous" bail.[4] Accordingly, Pulley has failed to state a claim for violation of his rights under the Eighth Amendment, and that claim will be dismissed pursuant to Rule 12(b)(6).

The Thirteenth Amendment, which prohibits involuntary servitude, is wholly inapposite to the substance of Pulley's complaint. To the extent that the claim is comprehensible, it appears that Pulley may believe that his continued incarceration after his acquittal of the robbery of the Chesterfield County bank constitutes involuntary servitude. However, as stated above, Pulley's present incarceration stems instead from the charges he faces in connection with the Dinwiddie County bank robbery. Stocks Aff. ¶ 21; Am. Compl. at 2. Accordingly, plaintiff fails to state a claim for violation of his rights under the Thirteenth Amendment, and defendant's Motion to Dismiss that claim accordingly must be granted.

Lastly, assuming that plaintiff's cursory allusion to defamation and slander in the amended complaint was intended to allege pendant state law tort claims, those claims at this juncture are subject to dismissal. Where § 1983 claims which over a district court otherwise would have original jurisdiction are subject to dismissal, there remains no basis to exercise

---

[4] Under Virginia law, bail is set by a judicial officer. See Va. Code, Art. I, Chap. 9, Title 19.2, § 19.2-119 et seq.

supplemental or pendant jurisdiction over state tort claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); White v. Ammar's, Inc., 1988 WL 1077 at *1 (4th Cir. 1988) ("Because there is no subject matter jurisdiction, White's additional claims regarding pendant jurisdiction were properly dismissed.") Because all of plaintiff's § 1983 claims are subject either to dismissal or to resolution in defendant's favor, subject matter jurisdiction over plaintiff's arguable tort claims does not exist, and they will be dismissed pursuant to Fed. R. Civ. P. 12(h)(3).

## IV. Conclusion

For the foregoing reasons, defendant's Motion to Dismiss and Motion for Summary Judgment will be granted. An appropriate Order shall issue.

Entered this 20th day of JAN. 2012.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge

11